UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CRIMINAL ACTION NO. 3:16-CR-00085-TBR


UNITED STATES OF AMERICA,                                          PLAINTIFF

v.

DAMON L. SHANKLIN,                                                 DEFENDANT

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Damon L. Shanklin's motion for a new

trial, [DN 69.] The United States responded, [DN 70], and Shanklin replied, [DN 71.] This

matter is now ripe for adjudication. For the following reasons, Shanklin's motion, [DN 69], is

**DENIED**.

### BACKGROUND

On September 7, 2013, after Louisville Metro Police Department (LMPD) detectives

obtained a tip from a reliable confidential informant that Damon L. Shanklin was cultivating

marijuana in his home, detectives obtained a search warrant for Shanklin's residence. [DN 29-2

at 2 (Detective Kevin McKinney's Affidavit for Search Warrant); DN 29-2 at 5 (Search

Warrant).] When executing that warrant, police discovered over fifty marijuana plants in a back

room of the house; various chemicals, tools, and equipment typically used in marijuana

cultivation; and pieces of mail and paperwork bearing Shanklin's name or otherwise associated

with him. [DN 46 at 3 (United States' Motion *in Limine*).] In the only bedroom, police found two

sets of digital scales and a magazine about growing marijuana. [*Id.*] On the nightstand next to the

bed, police found a loaded Glock 17 9mm handgun. [*Id.*] Shanklin was tried and convicted in

Kentucky state court on one count of cultivation of five or more marijuana plants, a felony under

Kentucky law. The Kentucky jury did not find Shanklin to be eligible for the sentence enhancement for possessing a firearm in furtherance of the marijuana operation, however.

On July 20, 2016, Shanklin was indicted in federal court for possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). [DN 1 (Indictment).] This Court held a jury trial on April 24 and 25, 2017, after which the jury found Shanklin guilty of knowingly possessing a firearm while being a convicted felon. [DN 62 (Jury Verdict).] Thereafter, Shanklin filed a motion for a new trial, alleging ineffective assistance of trial counsel and collateral estoppel. [DN 69.] For the reasons that follow, Shanklin's motion is denied.

## STANDARD

Federal Rule of Criminal Procedure 33 provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The decision to grant or deny a motion for new trial rests within the district court's sound discretion." *United States v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991). Accordingly, the Sixth Circuit "will affirm a district court's denial of a criminal defendant's motion for a new trial 'unless there has been error as a matter of law or a clear and manifest abuse of judicial discretion.'" *United States v. Allen*, 254 F. App'x 475, 477 (6th Cir. 2007) (citations omitted).

## DISCUSSION

Shanklin argues that his trial counsel was ineffective for five reasons. First, Shanklin asserts that his trial counsel failed to investigate all available evidence and interview all available witnesses. [DN 69 at 6–9.] Second, Shanklin argues that his trial counsel failed to file a motion to suppress challenging the validity of the search warrant, the validity of the warrant affidavit, and the subsequent search and seizure of the firearm from Shanklin's residence. [*Id.* at 10–15.]

Third, Shanklin contends that his counsel failed to file a motion to suppress challenging Shanklin's warrantless arrest. [*Id.* at 12–15.] Fourth, Shanklin contends that his trial counsel failed to properly advise him of the government's plea offer of time served, and that, if he had, Shanklin would have accepted it. [*Id.* at 15.] Fifth, Shanklin states that his counsel failed to notify the Court that one of the jurors at his trial "was not paying attention and sleeping." [*Id.* at 17–18.] In his reply, Shanklin "request[s] an evidentiary hearing on all issues presented in his motion and memorandum for a new trial." [DN 71 at 3 (Shanklin's Reply).]

Last, Shanklin claims that he is entitled to dismissal of the indictment or a new trial under the doctrines of collateral estoppel and double jeopardy since Shanklin was "acquitted" of possession the firearm in Kentucky state court. [*Id.* at 15– 17.]

## I. Timeliness of Shanklin's Motion

In its response, the United States first argues that Shanklin's motion was filed outside of the applicable time limit and therefore should not be considered by the Court. True, Rule 33 provides that "[a]ny motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(2). The verdict was rendered in Shanklin's case on April 25, 2017, [DN 62], and Shanklin filed the instant motion on July 21, 2017, [DN 69], nearly three months later. However, "Rule 33 must be read in conjunction with Federal Rule of Criminal Procedure 45, *United States v. Munoz*, 605 F.3d 359, 367 (6th Cir. 2010), which identifies circumstances in which this time period may be extended "on a party's motion made . . . after the time expires if the party failed to act because of excusable neglect." Fed. R. Crim. P. 45(b)(1)(B).

Indeed, as Shanklin argues in his response, courts in the Sixth Circuit have found the "excusable neglect" standard to be satisfied when the defendant obtains new counsel following

trial, defendant's new counsel files a motion for a new trial, and that motion alleges ineffectiveness on behalf of defendant's prior counsel. For example, in *Munoz*, the Sixth Circuit stated, "[a]s the Supreme Court has noted, it is axiomatic that 'an attorney ... is unlikely to raise an ineffective-assistance claim against himself.'" *Munoz*, 605 F.3d at 369 (quoting *Massaro v. United States,* 538 U.S. 500, 503 (2003). Moreover, the *Munoz* court recognized that, "in cases involving late-filed notices of appeal, several courts have either held or suggested that ineffective assistance of counsel may justify a finding of excusable neglect." *Id.* After weighing various factors, the *Munoz* court held "that [defendant's allegedly ineffective counsel's] continuing representation of [defendant] during the window for timely filing a Rule 33 motion was a valid reason for the delay, and that the delay was not fairly within [defendant's] control." *Id.* at 371. The same situation occurred in this case. Here, the Court did not grant Shanklin's trial counsel's motion to withdraw or appoint him his current counsel, Patrick J. Renn, until May 19, 2017. [DN 65.] Because this was about 24 days after the jury verdict was returned, Shanklin's allegedly ineffective counsel continued to represent him during the 14-day window for filing a Rule 33 motion for a new trial. Accordingly, the Court is satisfied that this "was a valid reason for the delay, and that the delay was not fairly within [Shanklin's] control." *Munoz*, 605 F.3d at 371.

Moreover, as the government has alleged no bad faith on Shanklin's part nor any prejudice it would suffer as a result of the nearly three month delay between the jury verdict and Shanklin's motion, the Court finds no issue with considering Shanklin's motion.

## II. Ineffective Assistance of Counsel

The majority of Shanklin's motion for a new trial focuses on the alleged ineffectiveness of his trial counsel. The Sixth Circuit has noted that "it is widely agreed that Rule 33's 'interest of justice' standard allows the grant of a new trial where substantial legal error has occurred.

*Munoz*, 605 F.3d at 373. "A violation of [Shanklin's] Sixth Amendment right to effective assistance of counsel clearly meets this standard." *Id.*

It is well settled that in order to prevail on a motion for new trial based upon ineffective assistance of counsel, the defendant must show that: (1) counsel's performance was deficient; and (2) it prejudiced the defense in a manner which deprived the defendant of a fair trial. *United States v. Garcia*, 19 F.3d 1123, 1126 (6th Cir. 1994) (citing *Strickland v. Washington,* 466 U.S. 668, 687 (1984)).

Under the *Strickland* standard, "[a]n attorney's performance is deficient if his representation 'fell below an objective standard of reasonableness.'" *United States v. Soto*, 794 F.3d 635, 646 (6th Cir. 2015), *reh'g denied* (Sept. 18, 2015), *cert. denied sub nom. Santana v. United States*, 136 S. Ct. 2007 (2016) (quoting *Strickland*, 466 U.S. at 688). This "mean[s] that trial counsel 'made errors so serious that counsel was not functioning as the 'counsel' guaranteed [him] by the Sixth Amendment.'" *United States v. Arny*, 831 F.3d 725, 731 (6th Cir. 2016) (quoting *Strickland*, 466 U.S. at 687–88). However, "[j]udicial scrutiny of counsel's performance must be highly deferential.," and, "[a]t all times, there is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* (quoting *Strickland*, 466 U.S. at 689).

To establish prejudice, defendants must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Strickland*, 466 U.S. at 687, 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694).

**(1) Failure to Investigate Evidence and Interview Witnesses**

Shanklin first argues that his counsel failed to properly prepare his case for trial by failing to investigate certain evidence and interview certain witnesses. Specifically, Shanklin asserts that he "provided his counsel with video recordings from his state court proceedings, as well as other documents and evidence from his state court case," and that he "repeatedly requested his counsel to review his state court case to prepare and effectively defend the allegations against him in this Court," but that his counsel refused. [DN 69 at 8.] Shanklin asserts that, if his counsel had reviewed the state court records, he

> could have introduced Shanklin's bank statement record showing the purchase of a phone card from Dino's Food Market at 26th Street and Broadway on September 3, 2013 at 3:23 p.m. Likewise, Shanklin's counsel could have obtained a copy of the photograph introduced by the defense at Shanklin's trial which showed a push button keypad and lock necessary to enter the residence. The photograph would show the door was breached by force - - kicking or battering the door - - and not by a key as testified to by LMPD officers. No key is necessary to enter this door.

[*Id.* at 8–9.] However, Shanklin does not explain to the Court how this information would have been relevant or mitigating. In other words, he has not explained how he was prejudiced by the deficient performance he alleges by showing a reasonable probability that the outcome of his trial would have been different. These allegations, even if true, do not establish Shanklin's innocence.

Next, Shanklin contends that he

> provided his counsel with the names of witnesses who could testify in his defense. Specifically, Patrice Swope, who dropped Shanklin off at his vehicle just prior to being unlawfully detained and arrested by LMPD officers; Ben Abernathy who saw LMPD officers enter the residence without a key; Destiny Lewis who worked at the food market where Shanklin made a purchase and just prior to being unlawfully detained and arrested; and family and friends who knew there was no night stand in the bedroom at 2429 Elliott Avenue. Shanklin's counsel made no attempt to interview and investigate these important defense witnesses.

[*Id.* at 8.] However, the Court can discern no prejudice Shanklin suffered as a result of this alleged deficient performance because "he has shown no real way in which their testimony would indicate his innocence." *Sowell v. Anderson*, 663 F.3d 783, 800 (6th Cir. 2011) *See Altman v. Winn*, 644 F. App'x 637, 642 (6th Cir.), *cert. denied sub nom. Altman v. Brewer*, 137 S. Ct. 76 (2016) ("Altman also argues that Duke was ineffective for failing to challenge prosecutorial misconduct, to interview witnesses, to make certain objections, and to examine police reports and witnesses' prior testimony, but he does not specify how these alleged failures prejudiced him."); *Sowell*, 663 F.3d at 800 ("Sowell was not prejudiced by his attorneys' failure to interview the state's witnesses because he has shown no real way in which their testimony would indicate his innocence."); *Dibble v. United States*, 103 F. App'x 593, 596 (6th Cir. 2004) ("Defendant points out that her trial counsel told the judge that it was his usual practice not to interview witnesses. She has failed, however, to identify how she was prejudiced by that failure."); *Carson v. United States*, 3 F. App'x 321, 324 (6th Cir. 2001) ("Carson has not established that he was prejudiced by any allegedly deficient performance of his counsel. Carson argues that his counsel should have called certain witnesses who would have testified that he was in Dayton at the time the carjacking was committed in Cleveland. The district court determined that Carson's argument was without merit because he had not provided evidence of any witnesses who would have so testified.").

Finally, Shanklin states that many of the witnesses who testified in his federal trial testified in his state court proceedings, including Detective McKinney and other LMPD officers. [*Id.* at 9.] According to Shanklin, his trial counsel "did not review the testimony of any of these witnesses, and failed to have their recorded testimony [from the state court proceedings] transcribed" and, "without a transcript, an effective and meaningful cross-examination [of these

witnesses] was impossible" in Shanklin's federal proceedings. [*Id.*] Shanklin asserts that "[t]estimony of officers at Shanklin's federal trial, and his state trial, show serious contradictions that would have been exposed had Shanklin's counsel obtained this important evidence." [*Id.* at 5.] Specifically, Shanklin states that

> LMPD officers who testified at Shanklin's state court trial offered inconsistent testimony, at best, regarding the collection and logging the Glock, Model 17, firearm into evidence. Officers who testified acknowledged that LMPD's standard operating procedures require evidence to be photographed before it is collected, and that searches be video taped if at all possible. Significantly, despite photographs being taken of other evidence, including the marijuana grow operation, no photograph was taken of the Glock, Model 17 firearm allegedly found in the bedroom at 2429 Elliott Avenue.

> The officer who claims to have found the firearm "in plain view," on a night stand in a bedroom testified he was one of the first officers to enter the residence. Available witnesses familiar with the residence at 2429 Elliott Avenue would have testified that there was no night stand in the bedroom. Further, one would generally expect a loaded firearm to be seized immediately. However, the firearm was one of the last items to be logged into evidence. The firearm was not photographed before it was collected. Significantly, another LMPD officer who entered the residence testified he did not see a firearm.

[DN 69 at 14.] First, Shanklin fails to explain how he was prejudiced by his counsel's failure to question LMPD officers about the lack of photographs of the handgun found in his bedroom.

With regard to the timing of the photograph being logged into evidence, the Court's notes indicate that both the United States and Shanklin's counsel *did* question the government's witnesses in this regard. Specifically, Detective McKinney testified at trial that the property log reflects the time in which the evidence was brought to the logging officer to be logged into evidence, but not necessarily the order in in which evidence was actually found and seized within the house. Accordingly, the Court does not find Shanklin's argument that "one would generally expect a loaded firearm to be seized immediately," but "the firearm was one of the last items to

be logged into evidence" to be persuasive in terms of his counsel's alleged failure to properly examine the government's witnesses.

With regard to the witnesses that would have allegedly testified that there was no nightstand in Shanklin's bedroom, where officers claimed to have found the firearm, Shanklin did not provide the affidavits of any of these witnesses he alleged would testify to these facts. *See Bass*, 460 F.3d at 839 (Explaining that the defendant "failed to point to any evidence (e.g., affidavits), besides his counsel's bare assertion, of what the witnesses would testify to."). Moreover, the Court does not find that the lack of those witnesses' alleged testimony demonstrates prejudice. Specifically, there is no "probability sufficient to undermine confidence in the outcome of the trial" that the result would have been different had those witnesses testified to those facts. Rather, *where* officers found the gun in Shanklin's bedroom was not material to the finding of guilt. Accordingly, the witnesses' alleged testimony that Shanklin did not have a nightstand in his bedroom is not sufficient to undermine confidence in the outcome of Shanklin's trial.

In sum, the Court does not find that Shanklin's counsel rendered ineffective assistance by failing to adequately investigate evidence and interview witnesses.

**(2) Failure to File a Motion to Suppress Evidence Challenging Warrant and Subsequent Search and Seizure**

Next, Shanklin argues that his trial counsel rendered deficient performance by failing to file a motion to suppress challenging the validity of the search warrant and warrant affidavit which were secured to perform a search of Shanklin's residence. In detail, Shanklin contends that his trial "counsel failed to challenge the patently false affidavit and testimony by pretrial motion; or through effective cross-examination at Shanklin's trial," and that, "[h]ad Shanklin's counsel successfully challenged the validity of the search warrant then the evidence seized pursuant to

the warrant, including the Glock, Model 17, firearm, would have been suppressed, and not available as evidence against Shanklin." [DN 69 at 11.]

"When a defendant claims that his counsel was ineffective because counsel failed to litigate a Fourth Amendment claim, he must also show 'that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.'" *Soto*, 794 F.3d at 646 (quoting *Kimmelman v. Morrison,* 477 U.S. 365, 375 (1986)). Here, Shanklin contends that the affidavit in support of the warrant to search his residence on Elliott Avenue contained false statements because the warrant was signed at 4:59 p.m., but Detective McKinney testified that he observed Shanklin leave his residence at 5:03 p.m. and the citation indicated that Detective McKinney handcuffed Shanklin at 5:15 p.m. [DN 69 at 10.] Shanklin claims that Detective McKinney then testified that he called a canine unit, which arrived 20 to 30 minutes later, and that after the canine unit arrived, Detective McKinney left to write the search warrant affidavit. [*Id.*] Shanklin states that McKinney testified that it took him approximately an hour to write the affidavit and get it signed, and that officers then surveilled the house for approximately 45 to 90 minutes before entering to execute the warrant. [*Id.* at 11.] In sum, according to Shanklin, "the time on the search warrant - - 4:45 p.m. - - - is false; and/or McKinney's testimony under oath, and his contemporaneous investigative letter, is false."

As an initial matter, Shanklin did not attach to his motion copies of the warrant, warrant affidavit, or Detective McKinney's testimony. However, the Court was able to locate the search warrant affidavit in the record as it was filed during an earlier stage of this case. [*See* DN 29-2.] However, after considering Shanklin's arguments and reviewing the affidavit, the Court finds that Shanklin did not make the requisite showing to obtain a *Franks* hearing to challenge the

validity of the warrant on the basis of false statements. The Sixth Circuit's "well-settled framework for *Franks* hearings requires a defendant to 'point to *specific* false statements' and then 'accompany his allegations with an offer of proof.'" *United States v. Green*, 572 F. App'x 438, 442–43 (6th Cir. 2014) (quoting *United States v. Cummins,* 912 F.2d 98, 101, 103 (6th Cir. 1990) (emphasis added)). To obtain a *Franks* hearing a defendant's offer of proof must "provide a substantial preliminary showing that a false statement was made either knowingly or intentionally, or with reckless disregard for the truth." *United States v. Mastromatteo*, 538 F.3d 535, 545 (6th Cir. 2008). Moreover, "[t]he movant must *also* show that the allegedly false statements were necessary for the magistrate's determination of probable cause." *Id.* Thus, "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Id.* (quoting *Franks,* 438 U.S. 154, 171–72 (1978)).

Here, Shanklin has made *no* preliminary showing that the allegedly false time contained in the affidavit was falsified knowingly, intentionally, or with reckless disregard for the truth. Rather, even if Shanklin is correct that the time is incorrect, this is likely "the result of negligence or mistake, neither of which entitles a defendant to a *Franks* hearing." *Green*, 572 F. App'x at 443 (citing *Cummins,* 912 F.2d at 102 (internal quotation marks omitted)). Moreover, the Court has no trouble finding that the remaining information contained in the affidavit, when the allegedly false time of 4:45 p.m. is removed, is sufficient to establish probable cause. Specifically, this includes both information from a reliable confidential informant *and* information officers obtained while obtaining a description of the residence. Accordingly, the Court cannot say that the time included in the affidavit was material to a finding of probable cause and that, if it was removed, the affidavit would not have supported a finding of probable

cause. Therefore, Shanklin has not proved that his Fourth Amendment claim on the basis of allegedly false statements in the warrant affidavit is meritorious.

Next, Shanklin argues that "the search warrant affidavit should have been challenged on the basis that information in the affidavit was obtained unlawfully." [DN 69 at 11.] Specifically Shanklin states that

> [t]he search warrant affidavit included information allegedly obtained from a confidential informant. The other alleged probable cause was obtained from LMPD officers who claimed to have smelled the strong odor of marijuana. The officers acknowledged that they smelled the marijuana after entering the front and rear of the residence and knocking on the doors. The entry by these officers onto the curtilage of the residence was before the warrant was obtained. The officers' alleged smell of marijuana was contained in the affidavit. The officers conducted a warrantless search, inside the curtilage of the residence, and, accordingly, Shanklin's counsel should have challenged the warrant, and moved to suppress all the evidence seized pursuant to the invalid warrant.

[*Id.* at 11–12.] As an initial matter, the Court is not persuaded that officers "entering the front and rear of the residence and knocking on the doors" is necessarily a Fourth Amendment violation. The Sixth Circuit has repeatedly held that "[p]olice officers are permitted to enter private property and approach the front door in order to ask questions or ask for consent to search the premises" and that "officers' decision[s] to proceed around the house to seek out a back door [i]s within the scope of the knock and talk investigative technique." *Hardesty v. Hamburg Twp.*, 461 F.3d 646, 654 (6th Cir. 2006) ("Therefore, the Hamburg officers' entry into the curtilage in order to effectuate the knock and talk investigative technique did not violate Plaintiffs' Fourth Amendment rights.").

However, even if the officers' actions *did* constitute an improper search, Shanklin does *not* challenge the reliability or sufficiency of the confidential informant for purposes of establishing probable cause. Here, the affidavit states:

Detectives received information from a reliable confidential informant that has been proven reliable by giving information in the past on numerous occasions that has led to the arrest and seizure of narcotics. The confidential informant wishes to remain anonymous for his/her safety. Within the last 48 hours of this affidavit being drafted the confidential informant observed numerous marijuana plants inside 2429 Elliott Ave. Confidential reliable informant advises Damon L. Shanklin is the only occupant of the home.

[DN 29-2 at 2 (Affidavit for Search Warrant).] It is well established that in the Sixth Circuit "that the affiant need only specify that the confidential informant has given accurate information in the past to qualify as reliable." *United States v. Greene*, 250 F.3d 471, 480 (6th Cir. 2001). And, "the appropriate inquiry is whether the information in [the] affidavit established a substantial basis for a finding by the magistrate that there was probable cause that" evidence of the suspected crimes would be found at Shanklin's residence. *Id.* at 479. Because the affidavit confirmed that the confidential informant in this case had a proven track record of giving useful and accurate information, this, alone, was a sufficient basis upon which the magistrate could find probable cause that there were drugs in Shanklin's house. *See id.* at 480 ("In this case, Lt. Hiller averred that the confidential informant had assisted federal and state law enforcement officials in the past and this information had resulted in numerous felony arrests. Consequently, the magistrate could reasonably have relied on the information gained from the confidential informant for the purposes of the search warrant."). Accordingly, even assuming Shanklin is correct that the officers improperly entered the curtilage of his residence when they smelled marijuana, because there was sufficient independent evidence of marijuana cultivation already given by the confidential informant, this too is insufficient to invalidate the warrant and the subsequent search and seizure.

In sum, because Shanklin has not shown "that his Fourth Amendment claim[s] [are] meritorious and that there is a reasonable probability that the verdict would have been different

absent the [allegedly] excludable evidence, he cannot "demonstrate actual prejudice'" for purposes of establishing ineffective assistance of counsel on this ground. *Soto*, 794 F.3d at 646.

### (3) Failure to File a Motion Challenging Shanklin's Warrantless Arrest

Similarly, Shanklin asserts that his counsel should have filed a motion to suppress challenging Shanklin's warrantless arrest, and that the failure to do so constituted deficient performance under *Strickland*. Again, to succeed on a claim of ineffective assistance of counsel on the basis of counsel's failure to make a Fourth Amendment argument, Shanklin must show "that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Soto*, 794 F.3d at 646 (quoting *Kimmelman,* 477 U.S. at 375).

Accordingly to Shanklin, he was "stopped, detained, and arrested without probable cause or suspicion." [DN 69 at 12.] Shanklin explains:

> McKinney testified that he and other LMPD officers were conducting surveillance at 2429 Elliott Avenue. McKinney claims he saw Shanklin leave the residence at 5:03 p.m. McKinney testified Shanklin entered a blue vehicle and drove from the residence. McKinney claimed a check of the vehicle's registration showed the vehicle was gold. McKinney and other officers followed Shanklin to a food market at 26th Street and Broadway. Shanklin entered the market and later exited. Shanklin had not committed any criminal or traffic violation.
>
> McKinney testified he approached Shanklin and asked for his identification. According to McKinney, Shanklin became agitated and took a "defensive stance." Shanklin was then placed in handcuffs. A canine unit was called to the scene. The canine unit arrived 20 to 30 minutes after Shanklin was detained and arrested. After the canine unit arrived the drug dog made a passive hit on Shanklin's vehicle. According to McKinney, a small amount of marijuana, including "shake" was located in the vehicle. The marijuana was not photographed or collected and placed in evidence. McKinney proceeded to obtain a search warrant for 2429 Elliott Avenue.

[DN 69 at 12–13.] However, Detective McKinney did not include *any* facts relating to the stop and detention of Shanklin in the warrant affidavit to search Shanklin's residence on Elliott

Avenue. Rather, the facts included in the affidavit related only to what officers learned from the confidential informant and from investigating the house. [*See* DN 29-2.] The handgun, which Shanklin was ultimately charged with possessing while being a convicted felon, was found pursuant to that search warrant, not pursuant to the alleged illegal arrest of Shanklin or any items seized from his person. Accordingly, Shanklin cannot establish prejudice as a result of his counsel's failure to challenge his arrest, meaning that he cannot establish a reasonable probability that, but for his counsel's failure to do so, the result of the proceeding would have been different. Rather, law enforcement still would have found the handgun in Shanklin's residence pursuant to the warrant which, as the Court explained above, has not been proven invalid. Therefore, Shanklin also cannot show ineffective assistance of counsel on this ground.

### (4) Failure to Properly Advise Shanklin of Plea Offer

Shanklin contends that his counsel provided ineffective assistance by failing to adequately advise him of the United States' plea offer of time served. [DN 69 at 15.] Shanklin acknowledges that he had knowledge of the government's offer prior to trial, but states that he requested a *written* plea offer, which his counsel failed to obtain. Shanklin asserts that, thereafter, his counsel informed him that the offer had been withdrawn prior to trial. However, Shanklin acknowledges that the government *again* asserted its plea offer orally on the morning of trial and that "Shanklin rejected the oral plea offer." [*Id.*] According to Shanklin, "had [he] been properly advised, and had his counsel obtained the requested binding written plea offer of time served, Shanklin would have accepted the offer, and would not have been forced to trial." [*Id.*]

The Court finds this argument unpersuasive in light of the fact that the United States requested to and did put its offer of time served to Shanklin *on the record* immediately prior to the start of Shanklin's trial. Specifically, on the morning of April 24, 2017, the United States

stated on the record that it had previously offered Shanklin a recommended sentence of time served in exchange for his plea of guilty. Shanklin's counsel stated to the Court that he had previously advised Shanklin of this offer, that Shanklin rejected it, and that he believed Shanklin still wished to reject it. When the Court asked Shanklin if he understood the United States' officer, Shanklin responded that he did and that he still wished to reject it and proceed to trial.

The Court personally observed Shanklin acknowledge this offer and confirm that he did not wish to accept it. Shanklin's argument that he was not properly advised is even more unpersuasive when considering the fact that Shanklin acknowledges his motion, that "again on the morning of his jury trial, Shanklin was offered the opportunity to plead guilty and receive a sentence of time served," which he rejected. [DN 69 at 15.] Indeed, an "attorney has a clear obligation to fully inform h[is] client of the available options." *Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003). However, Shanklin does not contend that his attorney failed to notify him of his range of options, or that his attorney failed to advise him of the potential consequences of *failing* to accept the offer. Rather, Shanklin's only claim is that his attorney failed to procure the government's offer in writing. This is insufficient for a finding of deficient performance under *Strickland*.

**(5) Failure to Notify the Court of an Inattentive Juror**

According to Shanklin, during his trial, he "observed one of the jurors not paying attention to the evidence, and, in fact, was dozing off and sleeping. Shanklin brought this to the attention of his counsel, and his counsel's response was 'good.'" [DN 69 at 17.] Shanklin contends that he "was denied a fair trial by the juror's inability, or decision, to not listen to all of the evidence," and that "his counsel was deficient for failing to notify the Court of this fundamental violation." [*Id.* at 17–18.]

As an initial matter, Shanklin "has not provided any evidence indicating which juror was sleeping, for how long, or during which part of the presentation of evidence the juror allegedly slept." *Haight v. White*, No. 3:02-CV-00206, 2017 WL 3584218, at \*21 (W.D. Ky. Aug. 18, 2017) (Stivers, J.). *See also Ciaprazi v. Senkowski*, 151 F. App'x 62, 64 (2d Cir. 2005) ("We note, moreover, that the evidence that the juror was actually dozing is thin. Some greater indication than is currently in the record that he was, in fact, asleep, as opposed to daydreaming or concentrating with eyes shut, would have significantly strengthened the argument that a hearing was warranted."); *Guinyard v. Keane*, 56 F. App'x 44, 45–46 (2d Cir. 2003) ("Guinyard cannot establish that his lawyer's performance was deficient on this score. As the district court noted, there is no proof that any juror was asleep, as opposed to daydreaming or concentrating with eyes shut.").

Moreover, several Courts have found that an attorney's decision *not* to object to a sleeping juror, especially when the attorney was aware of the juror, is likely a strategic decision. *See Haight*, 2017 WL 3584218, at \*21 ("Haight's counsel's comment [that jurors had been sleeping] and failure to move for a mistrial because of the alleged sleeping juror was likely tactical strategy, and thus not an objectively unreasonable performance under *Strickland*."); *Ciaprazi*, 151 F. App'x at 63 ("[T]rial counsel's decision not to object may well have been based on his desire to retain the inattentive juror rather than to seek to replace him with an alternate. . . this decision is paradigmatically strategic."); *Guinyard*, 56 F. App'x at 46 ("[E]ven if trial counsel saw a distracted juror, it was among the objectively reasonable strategic choices for counsel to forgo an objection. The juror in question may have been one that defense counsel favored and wanted to keep . . . Or counsel may have wished to avoid annoying the jury during the critical final stages of trial."); *Arispe v. United States*, No. CIV. 03-10124, 2005 WL

3132211, at *2 (E.D. Mich. Nov. 21, 2005) ("It is not necessarily an unreasonable strategy for a defense attorney to decline to object to juror inattentiveness, especially when the jurors may have been inattentive to the government's case. The Court agrees . . . that the petitioner has not shown defective performance or prejudice.").

Here, Shanklin contends that his trial counsel responded "good" when Shanklin brought the alleged sleeping juror to his attention. [DN 69 at 17.] This indeed suggests that his counsel's decision not to object to the allegedly sleeping juror was strategic in nature and that Shanklin's counsel may have believed this was beneficial for Shanklin's defense. Accordingly, Shanklin has not shown that his counsel rendered sufficient performance by failing to bring this issue to the Court's attention.

Moreover, Shanklin has not shown that he was prejudiced by his counsel's alleged error. Specifically, he has not shown a reasonable probability that, but for this alleged deficient performance, the result of the trial would have been different. *See Arny*, 831 F.3d at 731; *see also Hasan v. Ishee*, No. 1:03-CV-288, 2006 WL 3253081, at *22 (S.D. Ohio Aug. 14, 2006) ("[I]n order to succeed on his ineffective assistance of trial counsel claim, Hasan must also demonstrate that had his attorney requested dismissal or *voir dire* of the allegedly sleeping juror, there was a reasonable probability that the result of his trial would have been different.") Here, Shanklin has not made any such argument. He has not asserted that the juror was sleeping during a crucial part of the defense's case or during the Court's instruction of the jury, for example. When "one is left with pure speculation on whether the outcome of the trial . . . could have been any different, [this is] an insufficient basis for a successful claim of prejudice." *Baze v. Parker*, 371 F.3d 310, 322 (6th Cir. 2004). Accordingly, Shanklin cannot show ineffective assistance of counsel on this ground.

**(6) Evidentiary Hearing**

Though Shanklin has requested an evidentiary hearing on his claims of ineffective assistance of counsel, the Court does not find that one is warranted. "Whether to hold an evidentiary hearing before deciding a motion for a new trial is within the discretion of the trial court." *United States v. Bass*, 460 F.3d 830, 838 (6th Cir. 2006) (citing *United States v. Anderson,* 76 F.3d 685, 692 (6th Cir. 1996)). "We require a defendant to produce at least a modicum of evidence in support of a request for an evidentiary hearing on a motion for a new trial based on ineffective assistance of counsel. *United States v. Allen*, 254 F. App'x 475, 478 (6th Cir. 2007) (citing *Bass,* 460 F.3d at 838). Here, Shanklin has provided insufficient evidence of ineffective assistance of counsel in this case. Moreover, Shanklin attached no affidavits, transcripts, or declarations to his motion for a new trial. Without more, the Court does not find that an evidentiary hearing is required in this case. *See Bass*, 460 F.3d at 838 ("None of these bases for Bass's ineffective-assistance-of-counsel claim warrants a determination that the district court abused its discretion by not holding a hearing . . . The third basis fails because it was not an abuse of discretion for the district court not to hold a hearing on the issue of the uncalled witnesses when Bass failed to point to any evidence (e.g., affidavits), besides his counsel's bare assertion, of what the witnesses would testify to.").

**III. Collateral Estoppel and Double Jeopardy**

Finally, the Court finds Shanklin's arguments regarding collateral estoppel and double jeopardy to lack merit. Here, Shanklin contends that, after his trial in Kentucky state court for charges of cultivation of marijuana, though the jury found him guilty of the marijuana offenses, they did not find that Shanklin possessed a firearm in furtherance of his marijuana operation. According to Shanklin, therefore, "[t]he [state court] jury found Shanklin not guilty of the

firearm enhancement." [DN 69 at 17.] As a result, Shanklin argues that, pursuant to "the doctrine of collateral estoppel, the government should be barred from retrying this issue following Shanklin's state court acquittal." [*Id.*]

Neither collateral estoppel nor double jeopardy apply to prohibit the United States from trying Shanklin on charges of being a felon in possession of a firearm in *federal* court, however. "Collateral estoppel 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the *same parties* in any future lawsuit.'" *United States v. Uselton*, 927 F.2d 905, 907 (6th Cir. 1991) (emphasis added) (quoting *Ashe v. Swenson,* 397 U.S. 436, 443 (1970)). However, because the Commonwealth of Kentucky was the prosecutor in Shanklin's state court action, while the United States was the prosecutor Shanklin's federal action, Shanklin's federal court and state court proceedings are not between the "same parties," as is required for collateral estoppel to apply. Therefore, the doctrine of collateral estoppel does not bar the charges against Shanklin in federal court.

Moreover, double jeopardy principles do not bar the United States from trying Shanklin on the firearm possession charge in federal court because of the longstanding "dual sovereign" doctrine. "Under the dual-sovereign doctrine . . . 'the double jeopardy clause does not apply to suits by separate sovereigns, even if both are criminal suits for the same offense.'" *United States v. Jackson*, 473 F.3d 660, 669 (6th Cir. 2007) (quoting *United States v. Louisville Edible Oil Prods., Inc.,* 926 F.2d 584, 587 (6th Cir.) (internal quotation marks omitted)). "Whether two prosecuting entities are dual sovereigns in the double jeopardy context . . . depends on 'whether [they] draw their authority to punish the offender from distinct sources of power.'" *Puerto Rico v. Sanchez Valle*, 136 S. Ct. 1863, 1871, (quoting *Heath v. Alabama*, 474 U.S. 82, 88 (1985)).

And "[u]nder that approach, the States are separate sovereigns from the Federal Government (and from one another)." *Id.* (citing *Abbate v. United States,* 359 U.S. 187, 195 (1959)). Accordingly, because Shanklin's first prosecution relating to the firearm found in his residence was in Kentucky state court, while the second was in federal court, Shanklin was prosecuted by separate sovereigns, and therefore double jeopardy principles do not apply, even taking as true Shanklin's contention that these charges were "for the same offense." *See Jackson*, 473 F.3d at 669. Therefore, Shanklin is not entitled to a new trial on collateral estoppel or double jeopardy grounds.

CONCLUSION

For the reasons discussed herein, **IT IS HEREBY ORDERED** that Shanklin's motion for a new trial, [DN 69], is **DENIED.**

Date:

cc:     Counsel